J-S67040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| OWEN CORTEZ | : | |
| | : | |
| Appellant | : | No. 2650 EDA 2016 |

Appeal from the Judgment of Sentence February 22, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002426-2012

BEFORE: GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.: **FILED NOVEMBER 28, 2017**

Appellant, Owen Cortez, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions of attempted murder, criminal conspiracy, aggravated assault, burglary, persons not to possess firearms, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and possessing instruments of crime ("PIC").[1] We affirm.

The relevant facts and procedural history of this case are as follows. On January 11, 2011, Appellant and two men went to Victim's house. When Victim opened the door, the men pushed their way inside and proceeded to

---

[1] 18 Pa.C.S.A. 901(a), 903, 2702(a), 3502(a), 6105(a)(1), 6106(a)(1), 6108, and 907(a), respectively.

---

\* Former Justice specially assigned to the Superior Court.

demand money from Victim at gunpoint. Victim was shot in the back during the altercation. Victim's injuries required multiple surgeries and resulted in the removal of part of Victim's lung and Victim's spleen. Based on Victim's statements, police identified Appellant as one of the perpetrators of the crimes.

On March 9, 2012, the Commonwealth charged Appellant with attempted murder, criminal conspiracy, aggravated assault, burglary, persons not to possess firearms, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, PIC, simple assault, recklessly endangering another person ("REAP"), and criminal trespass. Appellant proceeded to a jury trial in September 2014. On September 22, 2014, the court declared a mistrial after the jury was unable to reach a unanimous verdict. Appellant proceeded to a second jury trial on October 1, 2015. On October 6, 2015, the jury convicted Appellant of attempted murder, criminal conspiracy, aggravated assault, burglary, persons not to possess firearms, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and PIC. The court deferred sentencing pending the preparation of a pre-sentence investigation ("PSI") report.

The court sentenced Appellant on February 22, 2016, to a term of sixteen (16) to thirty-two (32) years' imprisonment for the attempted murder conviction, a concurrent term of sixteen (16) to thirty-two (32)

years' imprisonment for the criminal conspiracy conviction, a concurrent term of ten (10) to twenty (20) years' imprisonment for the burglary conviction, a consecutive term of two (2) to eight (8) years' imprisonment for the persons not to possess firearms conviction, a concurrent term of two (2) to seven (7) years' imprisonment for the firearms not to be carried without a license conviction, a concurrent term of one (1) to two (2) years' imprisonment for the carrying firearms on public streets or public property in Philadelphia conviction, and a concurrent term of (1) to (2) years' imprisonment for the PIC conviction; thus, Appellant received an aggregate term of eighteen (18) to forty (40) years' imprisonment. Appellant timely filed post-sentence motions on February 29, 2016, which were denied by operation of law on June 30, 2016. Appellant timely filed a notice of appeal on July 29, 2016. On October 13, 2016, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on October 20, 2016.

Appellant raises the following issues for our review:

> WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN THE GUILTY VERDICTS?
>
> WERE THE VERDICTS AGAINST THE WEIGHT OF THE EVIDENCE?
>
> DID THE TRIAL COURT ERR IN ALLOWING INTO EVIDENCE IRRELEVANT AND OVERLY PREJUDICIAL EVIDENCE OF ALLEGED INTIMIDATION AND AN ASSAULT ON [VICTIM] THAT WAS NOT COMMITTED BY APPELLANT?
>
> DID THE [TRIAL] COURT ABUSE ITS DISCRETION BY

- 3 -

FASHIONING A SENTENCE THAT EXCEEDED THAT WHICH IS NECESSARY TO PROTECT THE PUBLIC, FAILED TO PROPERLY CONSIDER APPELLANT'S FAMILIAL SUPPORT, YOUTH AND BEING A FATHER OF A YOUNG CHILD, AND WHERE...APPELLANT'S SENTENCE WAS DISPARATELY GREATER THAN A CO-DEFENDANT'S SENTENCE?

(Appellant's Brief at 7 and 19).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Diana L. Anhalt, we conclude Appellant's first, second, and third issues on appeal merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed May 23, 2017, at 4-17) (finding: **(1)** with respect to Appellant's conviction of conspiracy to commit murder, Appellant, armed with handgun, went to Victim's home with two co-conspirators; when Victim answered door, Appellant pointed gun at Victim and demanded money; although one of Appellant's co-conspirators actually fired shot that wounded Victim, there was sufficient evidence for jury to infer conspiracy because Appellant and his co-conspirators arrived together, committed crimes together, and left together; thus, evidence was sufficient to sustain conviction of conspiracy to commit murder; with respect to Appellant's conviction of attempted murder, one of Appellant's co-conspirators shot Victim in his back; Victim's injuries required multiple surgeries, removal of Victim's spleen and part of his lung, and placement of stent in Victim's kidney; although Appellant did not fire bullet that hit vital part of Victim's body, shooting was done in furtherance of

- 4 -

crimes against Victim; thus, Appellant is liable for shooting, and sufficient evidence existed to sustain Appellant's conviction of attempted murder; with respect to Appellant's aggravated assault conviction, aggravated assault is lesser included offense of attempted murder; thus, sufficient evidence existed to sustain Appellant's conviction of aggravated assault; with respect to Appellant burglary conviction, Appellant and his co-conspirators forced their way into Victim's home while Victim was present; once inside home, Appellant pointed gun at Victim, grabbed Victim by his shirt, and demanded money; Appellant took $300.00 from Victim's person; thus, there was sufficient evidence to sustain Appellant's conviction of burglary; with respect to Appellant's convictions of persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets or public property in Philadelphia, witness testimony established that Appellant possessed firearm in public in Philadelphia; Commonwealth also presented certificate of non-licensure, which demonstrated that Appellant did not have license to carry firearm on date of incident; Commonwealth further presented evidence of Appellant's prior robbery conviction, which prohibited Appellant from possession of firearm; thus, sufficient evidence existed to sustain Appellant's convictions of Sections 6105(a)(1), 6106(a)(1), and 6108; with respect to Appellant's conviction of PIC, trial testimony established that Appellant brandished and pointed firearm at Victim; thus, sufficient evidence existed to sustain Appellant's conviction of PIC; **(2)**

- 5 -

Victim provided consistent statements to detectives, at his lineup identification of Appellant, and during preliminary hearing; jury was free to believe these consistent statements and discredit Victim's trial testimony in which Victim stated he did not remember giving any of his prior statements; thus, verdict was not against weight of evidence; **(3)** evidence of alleged intimidation and assault against Victim while Victim was incarcerated was relevant to explain Victim's behavior at trial; court admitted this evidence for specific purpose and issued limiting jury instruction; instruction informed jury to consider this evidence solely for its effect on Victim and not for truth of matter asserted; thus, court properly admitted evidence of alleged intimidation and assault of Victim).  With respect to Appellant's first, second, and third issues on appeal, we affirm based on the trial court's opinion.

In his fourth issue, Appellant argues the court failed to consider certain mitigating factors when it imposed Appellant's sentence.  Appellant specifically contends the court failed to consider Appellant's potential for rehabilitation, Appellant's rehabilitative needs, the fact that Appellant is a young man with substantial family support, and the fact that Appellant is a father to a young child.  Appellant further avers the court did not provide sufficient reasons to justify the imposition of a sentence, which is disparately greater than the sentence of one of Appellant's co-conspirators.  Appellant concludes his sentence of eighteen to forty years' imprisonment is excessive, and this Court should vacate and remand for resentencing.  As presented,

Appellant challenges the discretionary aspects of his sentence. *See Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa.Super. 2000). Prior to reaching the merits of a discretionary aspect of sentencing issue:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa.Super. 2013), *appeal denied*, 621 Pa. 682, 76 A.3d 538 (2013) (quoting *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006)). Generally, objections to the discretionary aspects of a sentence are waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa.Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

When appealing the discretionary aspects of a sentence, an appellant

must also invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 425-26, 812 A.2d 617, 621-22 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases.'" *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *appeal denied*, 600 Pa. 745, 964 A.2d 895 (2009), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (quoting *Commonwealth v. Williams*, 562 A.2d 1385, 1387 (Pa.Super. 1989) (*en banc*) (emphasis in original)). "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 913 (quoting *Commonwealth v. Brown*, 741 A.2d 726, 735 (Pa.Super. 1999) (*en banc*), *appeal denied*, 567 Pa. 755, 790 A.2d 1013 (2001)). Significantly, an allegation that the

sentencing court failed to consider certain mitigating factors, absent more, does not raise a substantial question for our review. **Commonwealth v. Rhoades**, 8 A.3d 912, 918-19 (Pa.Super. 2010), *appeal denied*, 611 Pa. 651, 25 A.3d 328 (2011), *cert. denied*, 565 U.S. 1263, 132 S.Ct. 1746, 182 L.Ed.2d 536 (2012).

Here, Appellant failed to raise his disparate sentencing claim in his post-sentence motion. As such, Appellant waived it for purposes of our review. **See Mann, supra**. With respect to Appellant's claim that the court failed to consider certain mitigating factors, Appellant properly preserved this claim in his post-sentence motion, Rule 1925(b) statement, and appellate brief. Nevertheless, Appellant's bald assertion does not raise a substantial question warranting our review. **See Rhoades, supra**.

In any event, the court had the benefit of a PSI report at sentencing. Therefore, we can presume it considered the relevant factors when it sentenced Appellant. **See Commonwealth v. Tirado**, 870 A.2d 362, 368 (Pa.Super. 2005) (holding where sentencing court had benefit of PSI, law presumes court was aware of and weighed relevant information regarding defendant's character and mitigating factors). Additionally, the court explained its reasons for Appellant's sentence as follows:

> Here, this [c]ourt sentenced…Appellant to 18 to 40 years['] incarceration. Appellant has a prior record score ("PRS") of 4. Appellant's attempted murder conviction carries an offense gravity score ("OGS") of 14. The deadly weapon enhancement sentence matrix guideline is 117-240 months of incarceration plus or minus 12 months. This

[c]ourt sentenced Appellant to 192-384 months of incarceration on his attempted murder conviction. This sentence was within the guideline range and therefore not excessive. Appellant's conviction for aggravated assault merged with his attempted murder conviction for sentencing purposes. Additionally, Appellant's convictions for conspiracy, burglary, [firearms not to be carried without a license], [carrying firearms on public streets or public property in Philadelphia], and PIC all ran concurrent to his attempted murder sentence. This [c]ourt ran Appellant's 24-96 month sentence for [persons not to possess firearms] consecutive to the attempted murder conviction to come to a total of 18-40 years of incarceration. This [c]ourt sentenced Appellant within the guidelines.

Here, this [c]ourt took into consideration Appellant's age, potential for rehabilitation, familial support and that he is the father of a young child as all of that information was included in the [PSI report] and told to this [c]ourt during sentencing. The PSI [report] mentions his age, Appellant is 30 years old, and this [c]ourt knew that during sentencing. Even the [Commonwealth] recognized that [Appellant] has a wonderful mother who has been to court every day for Appellant. The PSI [report] mentioned that Appellant would be able to live with his mother if and when he is out of prison. The presence of the PSI [report] was noted on the record, and is, by default, considered by this [c]ourt. This [c]ourt also allowed Appellant to speak on his behalf, who mentioned his daughter. This [c]ourt was just as obligated to consider aggravating factors in its sentencing[, l]ike that Appellant has been a very violent person and has been on a downward trend. This [c]ourt ultimately used its discretion in constructing [Appellant's] sentence…. Therefore, this sentence was not excessive, this [c]ourt properly applied partially consecutive sentences and took into consideration all sentencing factors in constructing the sentence.

(*See* Trial Court Opinion, filed May 23, 2017, at 19-20) (internal citations omitted). Thus, even if Appellant had properly preserved all of his sentencing claims and they had raised substantial questions, we would rely

on the court's analysis. Based on the foregoing, Appellant is not entitled to relief on his challenge to the discretionary aspects of his sentence. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/2017

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
CRIMINAL DIVISION TRIAL

| COMMONWEALTH | : | NO.: CP-51-CR-0002426-2012 |
| OF PENNSYLVANIA | : | **FILED** |
| | : | |
| v. | : | **Superior Court No.:** |
| | : | **2650 EDA 2016** |
| OWEN CORTEZ | : | |

**FILED**

MAY 2 3 2017

Office of Judicial Records
Appeals/Post Trial

CP-51-CR-0002426-2012 Comm. v. Cortez, Owen
Opinion

**OPINION**

7952113701

**ANHALT, J.**

Appellant in the above-captioned matter appeals this Court's judgment regarding his

convictions and his sentence for Attempted Murder, 18 Pa.C.S.A. § 901(a), Conspiracy to

Commit Murder, 18 Pa.C.S.A. § 903(c), Aggravated Assault, 18 Pa.C.S.A. § 2702(a), Burglary

18 Pa.C.S.A. § 3502(a), Possession of Firearms Prohibited ("VUFA 6105"), 18 Pa.C.S.A. §

6105, Firearms Not To Be Carried W/O License ("VUFA 6106"), 18 Pa.C.S.A. § 6106, Carry

Firearms in Public in Philadelphia ("VUFA 6108"), 18 Pa.C.S.A. 6108 and Possession of an

Instrument of Crime ("PIC"), 18 Pa.C.S.A. § 907(a). The Court submits the following Opinion in

accordance with the requirements of Pa.R.A.P. 1925(a). For the reasons set forth herein, the

Court holds that the judgment of conviction and sentence should be affirmed.

**PROCEDURAL HISTORY**

On October 8, 2011, police arrested and charged Appellant, Owen Cortez with numerous

offenses stemming from a shooting incident that occurred on January 11, 2011. The first trial of

this case resulted in a hung jury on September 22, 2014. Following a new jury trial on October 6,

2015, the jury found Appellant guilty of Criminal Attempt – Murder (H1), Conspiracy to

Commit Attempted Murder (H1), Aggravated Assault (F1), Burglary (F1), VUFA 6105 (F2),

VUFA 6106 (F3), VUFA 6108 (M1) and PIC (M1). On February 22, 2016, this Court sentenced Appellant to an aggregate sentence of 18 to 40 years of incarceration.

Appellant filed a timely notice of appeal on July 29, 2016. On October 13, 2016, this Court ordered Appellant pursuant to Pa. R.A.P. 1925(b) to file with the Court a Concise Statement of Matters Complained on Appeal. On October 20, 2016, Appellant filed a Statement of Errors Complained of on Appeal. Appellant raises the following issues on appeal:

a. The evidence was insufficient to support the guilty verdicts beyond a reasonable doubt, as there was no DNA or other physical evidence, and the testimony and statements of the Commonwealth witnesses—to include those belonging to complainant—were severely inconsistent and compromised by extreme bias/lack of credibility, and the complainant also lacked sufficiently independent recollection of the assault, and lastly the expert testimony of Dr. Steven Penrod proved the unacceptably unreliable nature of the complainant's identification of the appellant.
b. For the foregoing reasons the verdicts were against the weight of the evidence.
c. The trial court erred in allowing into evidence irrelevant and overly prejudicial evidence of alleged intimidation and an assault on the complainant that was not committed by the appellant.
d. The sentence was excessive and the Trial Court abused discretionary aspects of the sentence by entering a partly consecutive sentence and failed to give proper weight to the appellant's young age and potential for rehabilitation, familial support, and that he is the father of a young child.

## FACTUAL HISTORY

The victim, Mr. Leroy Frazier, testified at trial. Notes of Testimony (N.T.) 10/1/15 at 27. He was uncooperative during most of his time on the stand. However, the Commonwealth provided his testimony from Appellant's preliminary hearing, though Mr. Frazier claimed not to remember giving the testimony. Mr. Frazier also spoke with police shortly after the shooting and gave a similar version of events to his testimony, although he claims again, not to remember. *Id.* The following events are taken from both Mr. Frazier's statement to police and his prior testimony.

2

On January 11, 2011, Mr. Frazier was in his home at 1621 Huntington Street when he heard the doorbell ring. *Id.* at 25. When he opened the door, Omar McKnight – a man he knew – pushed the door open with Appellant standing directly behind him. *Id.* at 92. Mr. Frazier stated that there was a third individual with them known as "B-Dot." *Id.* Mr. McKnight walked past Mr. Frazier and Appellant followed him inside. *Id.* Appellant then pulled out a revolver from his waistband, grabbed Mr. Frazier by his shirt and demanded money. *Id.* at 93, 95. Mr. Frazier stated that he had $300 in his back pocket and then gave the money to Appellant. *Id.* at 95. Mr. McKnight then walked up the steps while Appellant tried to pull Mr. Frazier by his shirt to get him outside of his house. *Id.* at 96. When Appellant turned around, he turned the gun away from Mr. Frazier. *Id.* Mr. Frazier then grabbed for the gun, and they started fighting over possession of the firearm. *Id.*

As they both continued to tussle for the gun, Appellant called Mr. McKnight to come down the stairs to help him with the struggle. *Id.* Mr. McKnight then came down and punched Mr. Frazier in the back of the head. *Id.* Appellant told Mr. McKnight to let B-Dot inside Mr. Frazier's home. *Id.* Mr. Frazier attempted to block Mr. McKnight from the door so that he could not let B-Dot in the house. *Id.* Mr. McKnight eventually got passed Mr. Frazier and when Mr. Frazier looked back, there was a gun pointed at the top of his head. *Id.* at 97. Mr. Frazier then turned to his right and B-Dot fired the gun which struck Mr. Frazier in his back. *Id.*

Shortly after, Officer Miguel Diaz and his partner responded to a report of a person with a gun and a shooting on 1621 Huntington Street. *Id.* at 8. When Officer Diaz pulled up to the location, he made contact with a woman who stated that she heard a gunshot and pointed the officers toward the open front door of 1621 Huntington. *Id.* at 9. The officers then made entry, knocked on a couple doors and then went upstairs. *Id.* Officer Diaz found blood on the second

floor landing and on one of the doors. *Id.* Officer Diaz finally heard a response from the front bedroom where he found Mr. Frazier, laying on the floor bleeding from his back. *Id.* at 9-10. He was not talking and was in and out of consciousness. *Id.* at 11. The officers then carried Mr. Frazier down the stairs to the medics who then took him to the hospital. *Id.* at 11. As a result of the gunshot, Mr. Frazier had part of his lung removed, part of his spleen removed and had a stent placed in his kidney. *Id.* at 27. The doctors had performed emergency surgery the night he was shot which required reviving him twice. *Id.*

Detective Bill Urban conducted a lineup with Appellant. N.T. 10/5/15 at 15. Mr. Frazier immediately picked out number two and number six and stated that they were two people involved in his case. *Id.* at 17. Appellant was in the number two position and Omar McKnight was in the number six position. *Id.* at 18.

The Defense then called Dr. Steven Penrod as an expert in eyewitness identification. *Id.* at 40. The purpose of Dr. Penrod's testimony was to discredit Mr. Frazier's identification due to the brief time that Mr. Frazier saw his assailants. *Id.*

DISCUSSION

    **a. The evidence presented at trial was sufficient as a matter of law to support the guilty verdicts.**

Appellant contends that the Commonwealth failed to provide sufficient evidence to convict Appellant of all convicted charges. Specifically, Appellant asserts that there was no DNA or other physical evidence, the Commonwealth witnesses were inconsistent and compromised by extreme lack of credibility and that Mr. Frazier also lacked sufficiently independent recollection of the assault.

In considering a challenge to the sufficiency of the evidence, the reviewing court must determine whether, viewing all the evidence at trial and the reasonable inferences therefrom in

4

the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was proven beyond a reasonable doubt. *Commonwealth v. Chine*, 40 A.3d 1239, 1242 (Pa. Super. 2012); *Commonwealth v. Marinelli*, 690 A.2d 203, 210-11 (Pa. 1997); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997). This standard is applicable whether the evidence presented is circumstantial or direct, provided the evidence links the accused to the crime beyond a reasonable doubt. *Commonwealth v. Morales*, 669 A.2d 1003, 1005 (Pa. Super. 1996). Furthermore, questions of witness credibility and the weight to be afforded the evidence are within the sole province of the finder of fact, who is free to believe all, part, or none of the evidence. *Commonwealth v. Passmore*, 857 A.2d 697, 708 (Pa. Super. 2004). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Id.*

Additionally, since this matter deals with conspiracy, it is important to note that once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy. *Commonwealth v. Stocker*, 622 A.2d 333, 342 (Pa. Super. 1993). Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy. *Commonwealth v. Soto*, 693 A.2d 226, 229-230 (Pa. Super. 1997).

Witness testimony was sufficient to convict Appellant of all convicted offenses without the assistance of DNA or physical evidence. The jury was free to believe the preliminary testimony of Leroy Frazier although he claimed not to remember answering those questions. The jury was free to discredit Mr. Frazier's in-court testimony and believe his prior testimony, statement made to detectives and identification of Mr. McKnight and Appellant via lineup.

5

Appellant also attempts to use Dr. Steven Penrod to show that Mr. Frazier's identification of Appellant was unreliable. Notwithstanding, the jury was still free to believe Mr. Frazier's identification of Appellant as told to detectives, as provided in his preliminary hearing testimony and in his lineup identification. Based on the evidence presented, there is sufficient evidence to convict Appellant of all convicted charges.

### 1. Conspiracy to Commit Murder.

Appellant first contends that the Commonwealth failed to provide sufficient evidence to support a conviction of conspiracy to commit murder. Under the Pennsylvania Criminal Code:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903. "Intent required for criminal conspiracy is identical to that required for accomplice liability; in both crimes, defendant must act with intent of promoting or facilitating commission of offense." *Commonwealth v. Ruffin*, 463 A.2d 1117, FN7 (Pa. Super. 1983). However, direct proof of an agreement is not required. *Id.* at 1118. The conduct of the parties and the circumstances surrounding such conduct may be sufficient to establish an inference of agreement. *Commonwealth v. Kennedy*, 453 A.2d 927, 929-930 (Pa. 1982). Additionally, when there is evidence that one, who has not actually fired the gun, but has shared the criminal intent and the criminal activity, that person has aided and abetted in the commission of the crime may be held to the consequences of those acts. *Commonwealth v. Rife*, 312 A.2d 406, 408-409 (Pa. 1973). In other words, the Commonwealth must show that Appellant was part of an agreement to commit murder and that some action was taken by one of the conspirators in furtherance of the murder.

6

The Superior Court in *Commonwealth v. Collins*, 70 A.3d 1245, 1250 (Pa. Super. 2013) determined that there are reasonable grounds from which the jury could infer an agreement based on witness testimony which provided that he saw the defendant and another person approach and later flee the murder scene together. The overt act was the murder itself because the object of the conspiracy was successfully carried out. *Id.* The court in *Collins* determined that this evidence was sufficient to prove all elements of conspiracy. *Id.* Similarly, the court in *Commonwealth v. Wayne*, 720 A.2d 456, 460 (Pa. 1998), found the defendant, who did not fire a bullet, guilty of criminal conspiracy to commit murder of Mr. Rankine. The defendant in *Wayne* pointed a gun at a Mr. Hill as two other men began shooting at Mr. Hill's friend, Mr. Rankine, killing him. *Id.* The defendant and other two individuals then fled in the same direction. *Id.* The court in *Wayne* explained that the defendant need not be the one to actually shoot at the individual to be convicted of conspiracy to commit murder. *Id.* Additionally, the court in *Commonwealth v. Bracero*, 442 A.2d 813, 815 (Pa. Super. 1982) made it clear that the victim need not die in order to convict the defendant of conspiracy to commit murder. The defendant in *Bracero* shot victim in the shoulder with a shotgun. *Id.* The *Bracero* court found this sufficient evidence to convict the defendant of conspiracy. *Id.*

Here, Appellant went with two other men to the house of Mr. Frazier, armed with a handgun. N.T. 10/1/15 at 30. Appellant pulled a gun, pointed it at Mr. Frazier's stomach and chest and grabbed him by the shirt demanding money. *Id.* Similar to *Collins*, Appellant and his co-conspirators arrived, left and completed their plan together. *Id.* Appellant, with the help of Mr. McKnight, forced his way into Mr. Frazier's house. *Id.* at 95. As Appellant and Mr. Frazier tussled over the gun, Appellant even called for Mr. McKnight to help him during the struggle. *Id.*

7

Mr. McKnight then also let B-Dot into the house who then shot Mr. Frazier. *Id.* at 97. Not only is it reasonable for the jury to draw an inference of conspiracy, this evidence makes clear a conspiracy. A conviction of criminal conspiracy does not require the overt act be completed by Appellant, only that and overt act was done. Here, like the defendant's co-conspirators in *Wayne*, a man other than Appellant, in this case B-Dot, pulled the trigger and shot Mr. Frazier. *Id.* at 34. Therefore, there is sufficient evidence to convict Appellant of conspiracy to commit murder.

### 2. Criminal Attempt – Murder.

Appellant next contends that the Commonwealth failed to provide sufficient evidence for the conviction of attempted murder. "An individual is guilty of attempted murder in the first degree if he commits an act that is a substantial step towards the commission of the crime with a specific intent to kill." *Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008). The Commonwealth may establish the mens rea required for a specific intent to kill solely from circumstantial evidence. *Id.* Additionally, a jury may properly infer an intent to kill from the use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Sweger*, 505 A.2d 331, 333 (Pa. Super. 1986). In other words, the Commonwealth must show that Appellant, or in this case his co-conspirator, had the specific intent to kill Mr. Frazier and that he took a substantial step towards the commission of the crime.

The court in *Commonwealth v. Hobson*, 604 A.2d 717, 720 (Pa. Super. 1992) found sufficient evidence to convict the defendant of attempted murder. The court determined that the defendant's use of a gun, shooting the victim in his back, a vital part of the body, is sufficient to establish his intent to kill. *Id.* The victim in *Hobson* would have died had the bullet not been removed by a surgical procedure. *Id.* Similarly, the court in *Bracero*, 442 A.2d at 815 found

8

sufficient evidence to convict the defendant of attempted murder where the defendant shot the victim in the shoulder with a shotgun. *Id.*

To reiterate, although Appellant did not shoot Mr. Frazier in his back, Appellant is still liable for his co-conspirator's actions. And again, *Rife*, 312 A.2d at 408-409 explains that when there is evidence that one, even though he had not fired the gun, but although shared in the criminal intent, may be held responsible for the other's acts.

Here, like *Hobson*, and perhaps more serious than the injuries sustained in *Bracero*, Appellant's co-conspirator shot Mr. Frazier in the back, a vital part of his body. Mr. Frazier required multiple surgeries to treat his wounds and had to have part of his lung and his entire spleen removed, as well as having a stent placed in his kidney. N.T. 10/1/15 at 27. Mr. Frazier's injuries were so severe that he died twice on the operating table, having to be revived by doctors. *Id.* Although Appellant did not fire the bullet, this shooting was done in furtherance of the robbery of Mr. Frazier. *Id.* at 97. Since the shooting was done in furtherance of the robbery, Appellant is liable for the shooting, which is sufficient for an attempted murder conviction as he was responsible for the natural and probable consequence of the object of the crimes. Appellant's act of brandishing a firearm and pointing that weapon at Mr. Frazier while threatening him helps support this theory. *Id.* at 34. Appellant was the first person to brandish a weapon, and got into a struggle with Mr. Frazier over possession of the weapon. *Id.* at 96. If it had not of been for B-Dot, who ultimately fired the shot, Appellant would likely have been the one to fire at Mr. Frazier. *Id.* at 97. Mr. McKnight, B-Dot and Appellant had a plan. Appellant's actions in concert with his co-conspirators would leave a reasonable jury to infer an intent to kill Mr. Frazier. Additionally, B-Dot firing the weapon at Mr. Frazier constituted a substantial step toward the killing of him. *Id.* The evidence provided through witness testimony is sufficient for the jury to

9

infer all elements of attempted murder. As the Pennsylvania Supreme Court has stated, Appellant is responsible for every action taken by the other conspirators, including the attempted murder of Mr. Frazier. Therefore, Appellant was properly convicted of attempted murder.

### 3. Aggravated Assault.

Appellant next contends that the Commonwealth failed to prove the elements of aggravated assault. The Pennsylvania Criminal Code provides that an individual is guilty of aggravated assault if he, attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S.A. § 2702(a)(1).

At the outset, because there is sufficient evidence to convict Appellant of attempted murder of Mr. Frazier, there is sufficient evidence to convict Appellant of aggravated assault, as it is a lesser included offense. Aggravated assault is included within the offense of attempted murder since every element of aggravated assault is subsumed in the elements of attempted murder. *Commonwealth v. Anderson*, 650 A.2d 20, 22 (Pa. 1994). The Commonwealth in *Anderson* established guilt of attempted murder and no additional evidence was required to secure the defendant's conviction for aggravated assault. *Id.* The defendant's act of shooting the victim in the back of the neck constituted both aggravated assault and attempted murder. *Id.* The Supreme Court of Pennsylvania in *Anderson* explained that the act necessary to establish attempted murder coincides with the same act necessary to establish an aggravated assault conviction. *Id.* at 23. Further, *Anderson* stated that since the intent necessary to establish attempted murder is greater than aggravated assault, the aggravated assault intent threshold is already met by proving intent for attempted murder. *Id.*

10

### 4. Burglary.

Appellant next contends that there is not sufficient evidence to convict him of burglary. According to the Pennsylvania Crimes Code, a person commits burglary if, with the intent to commit a crime therein, the person enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present. 18 Pa.C.S.A. § 3502(a). Ultimately, the Commonwealth must prove that Appellant entered a domicile illegally with an intent to commit a crime while an individual was present.

The court in *Commonwealth v. Rayner*, 153 A.3d 1049, 1055 (Pa. Super. 2016) determined that evidence that the defendant and two other men broke into Dominick Williams' apartment with the intent of robbing him was sufficient to convict the defendant of burglary as a first-degree felony. With Mr. Williams present in his residence, one of the defendant's co-conspirators shot him and took a jar from him which contained marijuana. *Id.* This evidence by itself was sufficient for the court in *Rayner* to conclude that the elements of burglary were met. *Id.*

Here, like *Rayner*, Appellant and his co-conspirators forced their way illegally into Mr. Frazier's home in the presence of Mr. Frazier. N.T. 10/1/15 at 30. Appellant then pulled a gun on Mr. Frazier, grabbed him by the shirt and demanded money. *Id.* Additionally, during the entry into Mr. Frazier's home, Appellant took $300 from Mr. Frazier's person at gunpoint. *Id.* at 95. As explained in *Rayner*, this evidence by itself is sufficient to convict Appellant of burglary. Therefore, there is sufficient evidence to convict Appellant of burglary.

11

### 5. VUFA 6105, 6106 and 6108.

Appellant next contends that there is not sufficient evidence to convict him under VUFA

6105, 6016 and 6108. Under VUFA 6105(a)(1), VUFA 6106(a)(1) and VUFA 6108 respectively:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

Next, under VUFA 6106:

> [A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1).

Finally, under VUFA 6108:

> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless: (1) such person is licensed to carry a firearm; or (2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. § 6108.

In *Commonwealth v. Robinson*, 817 A.2d 1153, 1161-1162 (Pa. Super. 2003), the victim's

testimony that the assailants who robbed her possessed guns was sufficient to establish that the

defendant violated the Uniform Firearms' Act. The *Robinson* court made it clear that this

evidence is all that is needed to sustain a conviction of a violation of the Uniform Firearms' Act.

*Id.* at 1162. The court in *Commonwealth v. Petrakovich*, 329 A.2d 844, 847 (Pa. 1974)

determined there was sufficient evidence to support a conviction of carrying firearm without

license against the defendant who – based on witness testimony – walked into the diner where

12

his wife worked, drew a gun and fired it at his wife. Similarly, testimonial evidence was sufficient to prove the defendant guilty of carrying firearms on public streets or public property in Philadelphia when he shot victim on a Philadelphia public street. *Commonwealth v. Monroe*, 422 A.2d 193, 195 (Pa. Super. 1980).

Ultimately, the Commonwealth must prove that Appellant carried a firearm in public and was not permitted to carry a firearm in public because of a previous enumerated conviction for VUFA 6105, carried a firearm in public without a license for VUFA 6016 and that it occurred on the streets of Philadelphia for VUFA 6108.

Like *Robinson, Monroe* and *Petrakovich* there is witness testimony that Appellant possessed a firearm in public in Philadelphia. Mr. Frazier's testimony, as it stands alone, is enough. Here, the incident occurred at 1621 Huntington Street in Philadelphia. N.T. 10/1/15 at 8. Appellant carried the firearm on his person, entered the residence then brandished the firearm and pointed it at Mr. Frazier's stomach and chest, demanding money. *Id.* at 32. The Commonwealth provided a certificate of non-licensure regarding Appellant carrying a firearm on the date in question. N.T. 10/1/15 at 5. This evidence as it stands by itself, is sufficient for VUFA 6106 and 6108 convictions. Additionally, Appellant's previous conviction for robbery under 18 Pa.C.S.A. § 3701 – an enumerated felony under 6105(b) – coupled with testimonial evidence of his possession of a firearm is sufficient for a VUFA 6105 conviction. *See* 18 Pa.C.S.A. § 6105(b). Therefore, the Commonwealth provided sufficient evidence to sustain convictions for VUFA 6105, 6106 and 6108.

## 6. PIC.

Appellant next asserts that the Commonwealth did not provide sufficient evidence to sustain a conviction of PIC. A person is guilty of PIC if he possesses any instrument of crime

13

with intent to employ it criminally. 18 Pa.C.S.A. § 907(a). "In order to convict appellant of [PIC], the Commonwealth had to prove that she possessed her gun under circumstances manifestly inappropriate for such lawful uses the gun may have had and with an intent to employ it criminally." *Commonwealth v. Jeter*, 418 A.2d 625, 628 (Pa. Super. 1980).

In *Commonwealth v. Brown*, 23 A.3d 544, 561 (Pa. Super. 2011), testimony that the defendant pointed the gun at the victim and demanded money is sufficient to establish that the defendant possessed an instrument of crime for the purpose of employing it criminally. Similarly, the court in *Commonwealth v. Nelson*, 582 A.2d 1115, 1118 (Pa. Super. 1990) explained that the defendant's co-felon's handling of the firearm was sufficient to convict the defendant of PIC.

Here, testimonial evidence that Appellant brandished a firearm and pointed it at Mr. Frazier, by itself, is sufficient to establish Appellant's guilt of PIC. N.T. 10/1/15 at 30. Consistent with the evidence provided in *Brown*, the testimonial evidence here is sufficient to show that Appellant possessed a firearm. Additionally, even more convincing than *Nelson*, Appellant, not his co-conspirator was in possession of the gun. *Id.* at 93. Therefore, there is sufficient evidence to convict Appellant of PIC.

**b. The verdict was not against the weight of the evidence.**

Appellant contends that the verdict returned by the jury was against the weight of the evidence brought by the Commonwealth. Appellant cites the same reasons mentioned in his sufficiency argument. For the same reasons provided in the previous subsection, the verdict was not against the weight of evidence.

It is well settled that a motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v.*

14

*Clay*, 64 A.3d 1049, 1055 (Pa. 2013). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id.* The Supreme Court of Pennsylvania also set forth that:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) citing *Commonwealth v. Small*, 741 A.2d 666, 672–73 (Pa. 1999) (citations omitted). *Kaplan v. O'Kane*, 835 A.2d 735, 737 (Pa. Super. 2003)(holding "[t]he power to grant a new trial lies inherently with the trial court, and [the] appellate court will not reverse its decision absent a clear abuse of discretion or an error of law which controls the outcome of the case."). A true weight of the evidence challenge questions which evidence is to be believed. *Armbruster v. Horowitz*, 744 A.2d 285, 286 (Pa. Super. 1999).

The jury was free to believe all or part of the witness testimony, it was free to believe all of the evidence laid out in the previous subsection. To avoid reiteration, the evidence provided in the sufficiency analysis helps show that this verdict was not against the weight of evidence. The jury was proper in believing the testimony of Mr. Frazier as provided in his preliminary hearing, his statements to detectives and his lineup identification of Mr. McKnight and Appellant. Mr. Frazier's statements to police and preliminary testimony mirror each other. Additionally, Mr. Frazier's lineup identification helps support his preliminary testimony rather than his trial testimony. N.T. 10/5/15 at 17. The jury was also proper in discrediting Mr. Frazier's trial testimony in which he stated that he did not remember giving his preliminary testimony. Since the weight given to any and all evidence is for the finder of fact to determine, and because this

15

verdict is not "so contrary to the evidence as to shock one's sense of justice," the verdict was not against the weight of the evidence.

### c. This Court did not err in allowing evidence of alleged intimidation and an assault of Mr. Frazier.

Appellant contends that this Court erred in allowing into evidence "irrelevant and overly prejudicial" testimony of alleged intimidation and an assault of Mr. Frazier. Since this Court allowed this evidence in for the limited purpose of the effect it had on Mr. Frazier and instructed the jury accordingly, Appellant's assertion fails. This Court's discretion of admission of evidence is as follows:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that a trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevance and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Reid,* 811 A.2d 530, 550 (Pa. 2002).

This Court determined that this evidence was relevant for a limited purpose. N.T. 10/1/15 at 81. This Court also provided the jury with a limiting instruction:

> **THE COURT:** . . . You also heard about the threats and phone calls that were made after the police came and various things. And there's really only one reason why they were brought to your attention, and it's not whether they're necessarily true or not, but it's about the effect that it has on Mr. Frazier. For example, any [sic] threat that was made towards Mr. Frazier, you can't hold that against Mr. Cortez. That's not the purpose. This is not about him in that regard. It's about why Mr. Frazier may be doing the things that he's doing, just like the situation with the open cases. It's not because he did or he didn't get whatever, it's because of the affect it has on him. So don't think he's a bad guy, and therefore, X, Y and Z. You can't use that information in that regard. You're using it to assess whether he has motive to lie or whether he's going to get favorable treatment. It's what he thinks. Okay. So keep that in mind.

N.T. 10/5/15 at 121-122.

16

Here, this Court allowed evidence of Mr. Frazier's fear of violence while in prison and evidence of being physically assaulted while in prison by other unknown people. *Id.* at 8. This evidence was relevant as to what Mr. Frazier was feeling and was not admitted to show its truth or to prove that he was actually assaulted by people on behalf of Appellant. *Id.* at 7-8. The evidence was merely admitted to show that Mr. Frazier felt apprehension and thought that Appellant was out to get him. *Id.* This was not offered for the truth, and this Court made that clear to the jury. Since relevance and prejudice are within the purview of the trial court, barring abuse of discretion, and because this Court did not abuse its discretion, this Court did not err in allowing the evidence into the trial.

### d. The sentence was not excessive.

Appellant contends that the sentence imposed by this Court was excessive and that this Court abused its discretion by entering a partly consecutive sentence. Appellant also claims that this Court failed to give proper weight to Appellant's young age, potential rehabilitation, familial support and that he is a father of a young child. Since this Court sentenced Appellant within the guidelines, Appellant's argument lacks merit.

In considering the excessiveness of a sentence, courts stress that sentencing is within the sound discretion of the trial court and will not be disturbed unless it is outside the statutory limits or manifestly excessive. *Commonwealth v. Gee*, 575 A.2d 628, 630 (Pa. Super. 1990). Further, the appellate court must give great weight to the sentencing judge's discretion, as he or she is in the best position to measure various factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance or indifference. *Commonwealth v. Anderson*, 552 A.2d 1064, 1072 (Pa. Super. 1988). In the context of sentencing, an abuse of discretion is not shown merely by an error in judgment. *Commonwealth v. Kocher*, 602 A.2d

17

1308, 1310 (Pa. 1992). "Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* "Sentencing guidelines are merely advisory and a sentencing court may sentence a defendant outside of the guidelines so long as it places its reasons for the deviation on the record." *Commonwealth v. P.L.S.*, 894 A.2d 120, 129 (Pa. Super. 2006). Additionally, an appellate court shall vacate a sentence and remand to the sentencing court if the sentencing court sentenced outside the guidelines and the sentence is unreasonable. 42 Pa.C.S. § 9781(c)(3).

In *Commonwealth v. Cunningham*, 805 A.2d 566, 576 (Pa. Super. 2002) the sentencing court thoroughly explained the need for deviating from the sentencing guidelines in fashioning the appellant's sentence. *Id.* The *Cunningham* court focused on the appellant's extensive criminal history, the appellant's failure to rehabilitate and the need to protect society, particularly the elderly, from the appellant. *Id.* The Superior Court in *Cunningham* concluded that the sentencing court did not abuse its discretion in formulating the defendant's sentence. *Id.*

The court in *Commonwealth v. Mouzon*, 828 A.2d 1126, 1129 (Pa. Super. 2003) also provided sufficient explanation for deviating from guideline ranges in determining the defendant's sentence. The *Mouzon* court weighed most heavily the defendant's lack of remorse and deflection of accountability. *Id.* The court's specific reasons compelling it to deviate from the guideline range were made part of the record. *Id.* at 1130. The *Mouzon* court, therefore, did not abuse its discretion in formulating an upward departure sentence. *Id. Mouzon* also explained that the sentencing court has the discretion to run the sentences concurrently or consecutively to other sentences being imposed. *Id.* Additionally, *Commonwealth v. Graham*, 661 A.2d 1367, 1373 (Pa. 1995) stated that 42 Pa.C.S.A. § 9721 affords the sentencing court discretion to impose

18

its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. *See* 42 Pa.C.S.A. § 9721.

Here, this Court sentenced the Appellant to 18 to 40 years of incarceration. N.T. 2/22/16 at 21. Appellant has a prior record score ("PRS") of 4. Appellant's attempted murder conviction carries an offense gravity score ("OGS") of 14. The deadly weapon enhancement sentencing matrix guideline is 177-240 months of incarceration plus or minus 12 months. *See* 204 Pa. Code § 303.17(a). This Court sentenced Appellant to 192-384 months of incarceration on his attempted murder conviction. N.T. 2/22/16 at 21. This sentence was within the guideline range and therefore not excessive. Appellant's conviction for aggravated assault merged with his attempted murder conviction for sentencing purposes. *Id.* Additionally, Appellant's convictions for conspiracy, burglary, VUFA 6106, VUFA 6108 and PIC all ran concurrent to his attempted murder sentence. *Id.* This Court ran Appellant's 24-96 month sentence for VUFA 6105 consecutive to the attempted murder conviction to come to a total of 18-40 years of incarceration. This Court sentenced Appellant within the guidelines.

Here, this Court took into consideration Appellant's age, potential for rehabilitation, familial support and that he is the father of a young child as all of that information was included in the presentence investigation report ("PSI") and told to this Court during sentencing. The PSI mentions his age, Appellant is 30 years old, and this Court knew that during sentencing. Even the Assistance District Attorney recognized that he has a wonderful mother who has been to court every day for Appellant. N.T. 2/22/16 at 14. The PSI mentioned that Appellant would be able to live with his mother if and when he is out of prison. The presence of the PSI was noted on the record and is, by default, considered by this Court. *Id.* This Court also allowed Appellant to speak on his behalf, who mentioned his daughter. *Id.* at 18. This Court was just as obligated to

19

consider aggravating factors in its sentencing. Like that Appellant has been a very violent person and has been on a downward trend. *Id.* at 14. This Court ultimately used its discretion in constructing a sentence as explained in *Mouzon, Graham* and provided in 42 Pa.C.S.A. § 9721. Therefore, this sentence was not excessive, this Court properly applied partially consecutive sentences and took into consideration all sentencing factors in constructing the sentence.

**CONCLUSION**

After review of the applicable statutes, testimony, and case law, there is sufficient evidence to find Appellant guilty of all offenses. Additionally, this Court did not err in sentencing Appellant. Accordingly, the trial court's decision should be affirmed.

BY THE COURT:

DIANA L. ANHALT, J.

DATE: May 23, 2017

20

## PROOF OF SERVICE

I hereby certify that on the date set forth below, I caused an original copy of the Judicial Opinion to be served upon the persons at following locations, which service satisfies the requirements of Pa.R.A.P. 122:

Alvarez Law, L.L.C.
Daniel A. Alvarez, Esquire
100 S. Broad Street, Suite 1216
Philadelphia, PA 19110

Hugh Burns, Esquire
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Date: 5/23/17

By: _Diana L. Anhalt_
Diana Anhalt, Judge

21